In The Matter Of The Adoption Of

Kenneth James Daft, Jr.

(No. 13644)

Decided December 7, 1976.

*David L. Solomon* for appellant.

No appearance for appellee.

Neely, Justice:

This is an appeal from an order of the Circuit Court of Monongalia County denying appellants' petition for the adoption of an infant. We reverse.

As will appear, the fact pattern of this case is unusual and unlikely to recur. On July 23, 1975 appellants, a married couple, filed a petition in the Circuit Court of Monongalia County for the adoption of the infant, who had been born out of wedlock. Uniting in appellants' prayer for the adoption of the infant was the child's natural mother, whose duly acknowledged consent was

appended to the petition. The infant's natural father was alleged in the petition to be a fugitive from justice and a wanted criminal with a capias outstanding against him. It was further alleged that the father was a non-resident of the State of West Virginia and a person whose whereabouts were unknown. The final order of the Circuit Court indicates that these allegations were taken as true after evidence was heard in the matter.

The only disputed issue in the case is whether the Circuit Court was correct in its determination that appellants had provided inadequate notice to the natural father of the pending adoption proceedings.

At the time the adoption petition was filed the applicable statute did not require that the natural father receive any notice in circumstances such as these.[1] Applicable case law did, however, make it clear that the natural father should be notified and given an opportunity to appear and contest the adoption. *See, Hammack v. Wise*, _____ W. Va. _____, 211 S.E.2d 118 (1975); *Stanley v. Illinois*, 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972). Unfortunately, the case law did not prescribe or authorize any particular form of notice.[2] Thus appel-

---

[1] *W. Va. Code* 48-4-1 (1969), as it read in 1975, made no provision for notifying or obtaining the consent of, a father whose illegitimate child was sought to be adopted. *Code* 48-4-1 at that time provided, in pertinent part:

"(2) In the case of an illegitimate child sought to be adopted, the written consent, duly acknowledged, of the mother of such illegitimate child sought to be adopted must be obtained and presented with the petition. If the mother of such illegitimate child is dead, insane, has abandoned the child sought to be adopted or has been deprived of the custody of the person of such child by law, then and in such case the written consent, acknowledged as aforesaid, of the legal guardian of such child or those having at the time the legal custody of the child shall be obtained and so presented, and if there be no legal guardian nor any person having the legal custody of the child, then such consent must be obtained from some discreet and suitable person appointed by the court or judge thereof to act as the next friend of such child in the adoption proceedings.

[2] The West Virginia Legislature moved quickly to fill this void. *W. Va. Code* 48-4-1 (1976) now reads, in pertinent part:

lants were confronted with a dilemma. They had to give notice to the natural father, but there were no specific rules to guide them in making this effort. Matters were further complicated by the natural father's absence from the jurisdiction and his concealment from the authorities.

In this situation appellants made a *bona fide* effort to notify the natural father of the adoption proceedings. For two successive weeks notice of the time and place of the adoption proceedings was published in *The Dominion Post*, a local newspaper of general circulation, and the same notice was posted at the front door of the Monongalia County Courthouse. In view of the absence of other alternatives, and " ... with due regard for the practicalities and peculiarities of the case ... " *Mullane v. Central Hanover B. & I. Co.*, 339 U.S. 306, 314, 94 L.Ed. 865, 70 S.Ct. 652 (1950), we hold that appellants' notice was " ... reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314. Accordingly, the

---

"(b)(1) In the case of a child sought to be adopted, the written consent, duly acknowledged, of the mother and father (in the case of an illegitimate child, the mother and the determined father) or the surviving parent of such child sought to be adopted must be obtained and presented with the petition: Provided, that, if the mother and father (in the case of an illegitimate child, the mother and the determined father) are living and one is insane or has abandoned the child sought to be adopted, only the consent of the other parent shall be required, but the parent who is alleged to have abandoned the child must be personally served, if the determined father resides within the State, with a copy of the petition and notice of the date, time and place of the hearing on said petition at least twenty days prior to the date set for the hearing; and if after due diligence personal service cannot be obtained, or if the determined father resides outside the State, then the copy of the petition and the notice of the hearing may be sent by registered mail to the last known address of such abandoning parent, such service to be complete upon mailing."

decision of the Circuit Court of Monongalia County is reversed.

*Reversed.*